UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| KRISTINA FAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-141-AZ |
| | ) | |
| FRANK BISIGNARO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Kristina Fay's appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] For the reasons discussed, the Court agrees with Fay that the Administrative Law Judge's ("ALJ") written decision was not supported by substantial evidence and fails to draw a logical bridge to the conclusion and should be remanded for further proceedings.

**Background**

Plaintiff Fay was 56-years old at the onset of the alleged disability, which she claims was June 27, 2022. A.R. 54.[2] Fay graduated high school and previously worked as an administrative assistant at Purdue University. A.R. 34, 275.

---

[1] On May 20, 2025, both parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 8.

[2] Citations to the Administrative Record, filed at DE 5, are throughout as "A.R."

Fay filed an application for Social Security Disability Insurance and Supplemental Security Income benefits on August 29, 2022. A.R. 10. Her claim was denied in the initial application and upon reconsideration, and Fay thereafter requested a hearing before an ALJ. *Id.* On February 7, 2024, the ALJ held a telephonic hearing at which Fay, represented by counsel, and a Vocational Expert testified. A.R. 25-52.

On May 13, 2024, the ALJ issued a written opinion denying benefits. A.R. 10. Plaintiff timely appealed to the Appeals Council and on February 7, 2025, the Appeals Counsel denied Plaintiff's Request for Review. A.R. 1. Fay timely filed her complaint for review by the District Court. DE 1.

The ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981. In that written decision, the ALJ followed the standard five-step process to determine whether Fay was disabled. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 27, 2022. A.R. 12-13.

At step two, the ALJ determined that Fay suffered from the following severe impairments: "migraines, right shoulder arthritis, COPD, diabetes mellitus with neuropathy, lumbar degenerative disc disease, obstructive sleep apnea (OSA), peripheral arterial disease, coronary artery disease, and obesity (20 CFR 404.1520(c))." A.R. 13. The ALJ held this significantly limits Fay's ability to perform basic work activities as required by SSR 85-28. *Id.* The ALJ found Fay's

2

"hypertension, kidney stones, recurrent UTIs, hypokalemia, and stage III kidney disease" to be non-severe. *Id.*

At step three, the ALJ concluded that Fay does "not have an impairment or combination of impairments that meet or medically equals the severity of" any applicable Listing which would presumptively entitle him to a finding of disability. *Id.* The ALJ catalogued Fay's physical impairments and her subsequent consultations and treatments. A.R. 14-19. The ALJ further considered the noted limitations as a result of Fay's impairments. *Id.* While obesity is no longer a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1, the ALJ considered Fay's obesity in relation to her other impairments.

At step four, the ALJ determined Dell's Residual Functional Capacity (RFC) from June 27, 2022, to May 13, 2024, as:

> [P]erform[ing] sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes or scaffolds, but can occasionally climb ramps, stairs, balance, stoop, kneel, crouch or crawl. She cannot reach overhead with the right upper extremity. She must avoid concentrated exposure to extreme heat, cold, humidity, fumes, dust, odors, gases, and poor ventilation. She can have no exposure to hazards such as high exposed places and moving mechanical parts. The claimant can never be exposed to noise environments greater than a moderate – level 3 (such as a grocery store or business office). She can never be exposed to flashing light or light of greater brightness/intensity than that found in a typical grocery store.

A.R. 14. The ALJ stated, as is standard, that she "considered all symptoms … as consistent with the objective medical evidence and other evidence" in arriving at this RFC. *Id.* The ALJ followed the two-step process of first determining if there is a medically determinable impairment and second of determining if that impairment could be reasonably expected to produce the claimant's pain. *Id.* This requires the

ALJ to evaluate the "intensity, persistence, and limiting effects of the claimant's symptoms." *Id.* This is notable, as whenever statements about the intensity, persistence, and functionally limiting effects of pain are not substantiated by objective medical evidence, the ALJ must consider other evidence in the record. A.R. 14-15.

The ALJ first addressed Fay's claims that her headaches would happen frequently, several times a week which would cause her to be absent from work. A.R. 15. Fay testified that her diabetes with neuropathy would cause pain in her feet, including tingling which made it hard to walk and her feet to become stiff if she sat for too long. *Id.* She testified she needed to move every 10-15 minutes and could walk a half of a block. *Id.* She also noted grip issues, such as frequently droppings things with her left hand. *Id.* While the ALJ found at part one that these impairments could be reasonably expected to cause the alleged symptoms, at part two she found that Fay's statements regarding intensity, persistence, and limiting effects were not entirely consistent with the medical evidence. *Id.*

In examining Fay's medical history of headaches and migraines, the ALJ noted that on November 1, 2022, she reported doing well and received Qulipta from the pharmacy. A.R. 808. She indicated the headaches were daily but "not so bad." *Id.* At another appointment just three days later, Fay again noted she "feels well." A.R. 832. Fay also submitted as documentation a letter from November 11, 2022, from Helen Terrell, a previous coworker. Terrell noted that Fay's headaches have gotten worse each year, cause her to miss work 2 to 3 times a week, and require her to stay in bed

with no noise or light. A.R. 164. On January 12, 2023, she underwent a consultative physical examination. A.R. 694. At this examination, Fay noted that "weather and stress trigger her migraines." A.R. 695. In February of 2023, Fay reported that she cannot function due to migraines 1 to 3 times a week. A.R. 802. On June 1, 2023, Fay sent in a "Headache Questionnaire" to the Social Security Administration. A.R. 198-201. She indicated her headaches have steadily been getting worse, are caused by weather changes, loud noises, stress, and other causes, occur weekly, last for 1 to 3 days, and requires a dark room with no movement or noise. *Id.* On September 12, 2023, Fay had an office visit where she noted her headaches had lightened but she still has several per month. A.R. 1148. She indicated she was not interested in Botox, and that CPAP treatment did not help her in the past. A.R. 1149. She was prescribed Ubrelvy. *Id.* On September 18, 2023, Fay submitted a Disability Report to the SSA, where she indicated that since her last report on May 13, 2023, her migraines have gotten worse. A.R. 204. On that previous report from May 13, Fay had also stated her migraines were worse than before. A.R. 190. Fay then had another office visit on December 13, 2023, where she indicated a CPAP may have helped reduce the strength of the migraines, but the Ubrelvy did not help. A.R. 1142.

At the hearing before the ALJ, Fay explained how she feels unable to work because her migraines occur randomly and frequently, several times a week. A.R. 35. Fay reiterated this frequency upon questioning by her attorney. A.R. 40-41. She stated that weather changes, bright lights, and loud noises cause the migraines, which requires her to "live in [her] cave," meaning dark and quiet place. A.R. 41. She

also noted that her prior employer, Purdue, attempted to adjust the lightning in the office for her, but it did not help. *Id.* She explained that because of the migraines, her ability to focus and concentrate would be affected for two hours or more, and she would often have to close her eyes to sleep because of the headaches, which she said was "so embarrassing." A.R. 43-45.

The ALJ then questioned the VE, and proposed a hypothetical about an individual who, among other limitations, "must avoid concentrated exposure to extreme heat or cold…can never be exposed to noise environments greater than moderate…[and] can never be exposed to flashing light or light of greater brightness and intensity than that found in a typical grocery store." A.R. 48. The ALJ did not add any qualifiers as to being off task for periods of two hours. A.R. 48-52. The VE did note, however, that absences (defined as missing an entire day, coming in late, leaving early, or any combination of those) are limited to 10 to 12 days before it becomes work preclusive. A.R. 51.

In her written decision, the ALJ said the following regarding Fay's headaches:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are not fully consistent with the evidence of record. The claimant testified to an inability to work due to headaches because they happen frequently, several times a week and she would not know when she would be absent from work. The record does show that the claimant has headaches and complains of migraine pain. However, the record also shows that the claimant had no interest in trying Botox for the headaches. Moreover, with medication the claimant's headaches lightened up some. Additionally, there was improvement with the headaches with medication and with consistent use of the CPAP. The claimant indicated in her nephrology appointment that she had migraines on and off.

A.R. 17 (internal citations omitted).

6

With the RFC in mind, at step four, the ALJ concluded that Fay is able to perform past relevant work as a secretary, data entry clerk, accounting clerk, and administrative clerk. A.R. 19. Accordingly, the ALJ found Fay not under a disability for the relevant time subsequent to June 27, 2022. A.R. 19-20.

Fay now argues three errors on appeal: (1) the ALJ erred by failing to include any off-task or absenteeism restrictions in the RFC; (2) the ALJ failed limit Fay to low stress jobs since stress can trigger her migraines; and (3) the ALJ failed to include any handling instructions in the RFC. DE 9 at 8.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

An ALJ must articulate their analysis of the evidence in order to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). "An ALJ need not specifically address every piece of evidence,"

*O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2014), but they likewise cannot ignore entire lines of evidence that undercut or contravene their conclusions. "Remand is necessary when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up). The Court "cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)).

While "there is no objective measure for migraine symptoms," an ALJ must still examine all of the evidence, both medical and otherwise, when determining a claimant's RFC. *Overton v. Saul*, 802 F. App'x 190, 192 (7th Cir. 2020). This includes carefully combing through the record for evidence of the extent of the pain from the migraines, the degree to which they debilitate the claimant, and the effectiveness of treatments. *See id.* However, "once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Id.*

Here, the record is replete with Fay's assertions that the pain from migraines was debilitating. The headaches would last for multiple hours, prevent from her working in any capacity, necessitate her retreat to a dark quiet place, and would occur multiple times a week. Indeed, she testified this was precisely why she was fired. The Commissioner responds that Fay fails to point to any evidence in the record beyond her own subjective statements, but also concedes, as noted above, that there are no objective measures of migraine symptoms. DE 14 at 5. Because there is no way to objectively measure the level of pain caused by headaches, an ALJ has no choice but to rely on Fay's statements, or other corroborating evidence (such as the coworker's letter as to Fay's absences due to migraines). And yet, the ALJ found Fay's statements to not be consistent with the medical record. To reach this conclusion, the ALJ pointed to two pieces of evidence: Fay's lack of interest in trying Botox, and some improvement from the use of a CPAP. A.R. 17.

This is not enough to create a logical bridge to the conclusion that the migraines are not severe enough to be disabling. Indeed, mere mentions of improvement "do not give us an accurate description of [a claimant's] true neurological state…. The key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). But the ALJ did not ask Fay at the hearing how much her headaches had improved, or even if the improvement Fay mentioned at her doctor's visits was still the case. In fact, evidence in the record more recent in time suggests that Fay believed her

10

headaches were getting worse, not better. As to Fay's lack of interest in trying Botox, this fails to create a logical bridge because there is nothing in the record or the ALJ's opinion to suggest *why* Fay was not interested. The ALJ seems to assume Fay was not interested because her headaches were improving, but Fay never stated this. Was Botox too expensive? Not covered by insurance? Or would the side effects exacerbate other impairments?[3]

> Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. An ALJ may need to "question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." The claimant's "good reasons" may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects.

*Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (internal citations omitted); *see also Visinaiz v. Berryhill*, 243 F. Supp. 3d 1008, 1014 (N.D. Ind. 2017) (remanding where "the ALJ did not ask Plaintiff about her perceived failure to seek adequate treatment" when the plaintiff's only treatment was through medication that provided "some benefit"). There is simply not enough here to conclude that Fay's headaches had improved, nor that they had improved enough for her to enter the workforce. This is not to say the ALJ is wrong her in her conclusion, but rather that substantial evidence is needed to bridge that gap in her reasoning.

The ALJ also failed to explain why she found Fay's testimony not credible, as implied by her decision neglecting to mention the significant off-time Fay must take

---

[3] The record shows Fay declined to take Zofran for nausea because a possible side effect of Zofran is headaches.

when experiencing a migraine. Fay's claim that her debilitating headaches required her to sit or sleep in a dark quiet room for one or more hours is consistent throughout the record and was the subject of significant questioning at the hearing. Yet, the ALJ does not mention this at all in her decision, nor did she include any off-time in her hypothetical to the VE. This is similar to a case involving headaches addressed by the Seventh Circuit in *Indoranto v. Barnhart*, 374 F.3d 470 (7th Cir. 2004). There, the claimant experienced near daily headaches which lasted from a few minutes to an entire day. *Id.* at 473. As part of the claimant's remedy (for her head and muscle pains), she would lie down and take hot baths up to three times day. *Id.* at 474. When the ALJ stated "there is no clinical support for this extreme limitation in the record," the Seventh Circuit remanded the case, declaring "the ALJ must consider subjective complaints of pain if the claimant can establish a medically determined impairment that could reasonably be expected to produce the pain.  Further, the ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence." *Id.* (internal citations omitted). They further explained that the ALJ must also address how the headaches affect a claimant's ability to work. *Id.* This would be further relevant since the VE testified that 10 to 12 absences would be work preventative. Fay's testimony to the amount of time her migraines would prevent her from working would more than clear this bar.

Because the ALJ did not build a logical bridge from the evidence to her conclusions regarding Fay's headaches, Fay must be given another hearing to present

evidence. Since this issue is dispositive, the Court need not address Fay's other arguments, though she should be prepared to raise them at her new hearing.

## Conclusion

For the reasons discussed, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Plaintiff.

**SO ORDERED** this 25th day of March 2026.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT